**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)**

| | | |
|---|---|---|
| ROMEO HILLMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No. GLS-16-02840 |
| | ) | |
| DICKSON WALE SOROYE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

Pending before this Court are the following motions: (1) a motion for summary judgment filed by Defendant Dickson Wale Soroye ("Defendant") (ECF Nos. 83, 83-1) ("Defendant's Motion"); and (2) a cross-motion for summary judgment filed by Plaintiff Romeo Hillman ("Plaintiff") (ECF No. 85) ("Plaintiff's Cross-Motion"). The issues have been fully briefed. (ECF Nos. 84, 86). Upon review of the pleadings and the record, the Court finds that no hearing is necessary. *See* L.R. 105.6. For the reasons set forth below, Defendant's motion for summary judgment is **DENIED**; and Plaintiff's cross-motion for summary judgment is **DENIED**.

## I.    BACKGROUND

### A.  Procedural Background

On August 11, 2016, Plaintiff, proceeding *pro se*, filed a civil rights action under 42 U.S.C. § 1983 against the Chesapeake Detention Facility, alleging that a correctional officer failed to separate him from a cellmate who repeatedly sexually assaulted him. (ECF No. 1). The Honorable Theodore D. Chung ordered Plaintiff to file an amended complaint identifying the correctional officer responsible for Plaintiff's alleged deprivation of his constitutional rights because a

detention facility is not a "person" subject to suit under § 1983.  (ECF No. 3).  On October 26, 2016, Plaintiff filed his First Amended Complaint against "Officer 'Name Unknown.'" (ECF No. 4).  In the First Amended Complaint, Plaintiff provided a description of the correctional officer as well as the date and time that Plaintiff informed the officer that he was having problems with his cellmate, that he was "concerned for [his] safety," and that it was urgent for the officer to move Plaintiff or his cellmate to a separate cell.  (*Id.*).  In a June 15, 2017 Order, Judge Chuang determined that Plaintiff had presented sufficient facts to allow the officer's identity to be found through discovery and ordered the Office of Attorney General of Maryland to enter an appearance if it would accept service on behalf of the unnamed correctional officer.  (ECF No. 6).  On June 19, 2017, the Office of the Attorney General entered an appearance in this case as an interested party, however, it refused to accept service on behalf of the unnamed officer.  (ECF No. 7).

On May 11, 2018, Judge Chuang ordered the Office of the Attorney General to investigate the identity of the unnamed officer.  (ECF No. 8).  In response to Judge Chuang's Order, the Office of the Attorney General identified Sergeant Dickson Soroye.  (ECF Nos. 11, 13).  Upon receiving notice from Plaintiff that he intended to pursue this action against Sergeant Soroye, Judge Chuang ordered the Clerk of the Court to amend the docket and add Soroye as a Defendant.  (ECF No. 16).

On December 3, 2018, Defendant filed a motion for summary judgment (ECF No. 18), which Judge Chuang denied in an order issued on March 28, 2019 (ECF No. 24).  In that same order, Judge Chuang granted Plaintiff's "Motion for Leave to File Amended Complaint," and the Clerk of the Court docketed Plaintiff's Second Amended Complaint on March 28, 2019.  (ECF No. 25).  On April 29, 2019, Defendant filed a Motion to Dismiss and/or for Summary Judgment in response to Plaintiff's Second Amended Complaint.  (ECF No. 26).  On June 26, 2019, Judge Chuang granted in part and denied in part Defendant's motion to dismiss, dismissing Plaintiff's

official capacity and Fifth Amendment claims.  (ECF No. 30).  Judge Chuang also appointed pro bono counsel to represent Plaintiff in this matter.  (ECF Nos. 30, 31).  Defendant filed his Answer to Plaintiff's Second Amended Complaint on July 18, 2019.  (ECF No. 32).

On January 13, 2020, Plaintiff filed a Motion for Leave to File Third Amended Complaint, (ECF No. 43), which Judge Chuang granted on February 13, 2020 (ECF No. 45).  In his Third Amended Complaint, Plaintiff alleges that he faced a substantial risk of serious physical harm due to his placement in a cell with Daryl Lee, in light of Plaintiff being "openly homosexual, [] a first-time offender incarcerated for a nonviolent offense, and [] non-confrontational."  (ECF No. 43-1, ("Third Amended Complaint"), ¶ 54).  Plaintiff alleges that Mr. Lee was "incarcerated for a violent offense and outwardly manifested an aggressive and physically abusive demeanor."  (*Id.*).  Plaintiff contends that Defendant's deliberate indifference to this substantial risk of physical harm resulted in his being raped by Mr. Lee multiple times.  (*Id.*, ¶ 56).  The Third Amended Complaint contains a single count pursuant to 42 U.S.C. § 1983, alleging that Defendant's deliberate indifference, and resulting failure to protect Plaintiff from Mr. Lee, violated Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment.  (*Id.*, ¶ 58).  Defendant answered Plaintiff's Third Amended Complaint on February 18, 2020.  (ECF No. 47, Defendant's Answer to Third Amended Complaint ("Answer")).

On February 26, 2021, this matter was referred to the undersigned for all further proceedings.  (ECF No. 74).  The aforementioned summary judgment motion and cross-motion for summary judgment were filed by the Defendant and Plaintiff, respectively, at the close of discovery.

### B. Factual Background

The following facts are undisputed.  Plaintiff is currently a federal inmate at Federal Correctional Institution Petersburg Low in Hopewell, Virginia.  From August 11, 2015, to October 15, 2015, Plaintiff was a federal pre-trial detainee housed at Chesapeake Detention Facility ("CDF").  (Third Amended Complaint, ¶ 6; Answer, ¶ 6).  CDF is operated by the Maryland Department of Public Safety and Correctional services and houses federal pre-trial detainees.  (ECF No. 83-5, Declaration of Robert Koppel, ("Koppel Decl."), ¶ 1).  Upon admission to CDF, detainees are provided with a copy of the Detainee Handbook.  (Koppel Decl., ¶ 3).  The 2015 version of the Detainee Handbook includes a section related to the Prison Rape Elimination Act that describes a detainee's right to be free from sexual assault.  (ECF No. 84-3, pp. 53-54).  In addition, the Detainee Handbook includes a separate section that sets forth all of CDF's administrative grievance procedures.  (ECF No. 84-3, pp. 60-61; Koppel Decl., ¶ 4).

On August 15, 2021, Plaintiff received CDF's Detainee Handbook.  (ECF No. 83-4, Plaintiff's Amended Responses to Defendant's Requests for Admission, ("Defendant's RFAs"), ¶ 1; ECF No. 84-1, p. 25, Deposition of Romeo Hillman ("Hillman Dep."): 23:10-12).

During Plaintiff's detention at CDF, he was housed in a cell with Darrell Lee.  Mr. Lee sexually assaulted Plaintiff several times between August 18, 2015 and August 31, 2015.[1]  Plaintiff was moved to a different cell on September 24, 2015.  (Third Amended Complaint, ¶ 36).

During his detention at CDF, Plaintiff did not complete or submit to CDF officials any forms alleging that he was sexually assaulted.  (Defendant's RFAs, ¶ 5; Hillman Dep.: 86:2-10).  Nor did Plaintiff inform a medical provider, mental health provider, correctional officer,

---

[1] Plaintiff alleges in his Third Amended Complaint that he was sexually assaulted by Mr. Lee four times. (Third Amended Complaint, ¶¶ 23-26).  During his deposition, Plaintiff testified that he was sexually assaulted by Mr. Lee a total of seven times.  (Hillman Dep.: 96:1-3).

correctional supervisor, case manager, or the Defendant, that he had been sexually assaulted during his detention.  (Defendant's RFAs, ¶ 25; Hillman Dep. 96:20-97:17).  Plaintiff also admits that he did not use CDF's Prison Rape Elimination Act hotline to report being sexually assaulted and never asked a third-party to report the assaults on his behalf.  (Hillman Dep.: 95:1-4, 12-13).  Put another way, Plaintiff did not file a written request for an administrative remedy or a written informal grievance.

Instead, Plaintiff contends that he complained to the Defendant on two occasions that he feared that his cellmate would physically harm him, and that he urgently needed to be moved.  Specifically, on September 2, 2015, Plaintiff informed the Defendant that he was "having problems" with his cellmate, that he was "concerned for [his] safety, and that it was urgent for [Defendant] to separate" Plaintiff from his cellmate.  (Hillman Dep.; 93:6-11).  Plaintiff raised the same complaint again to Defendant on September 15, 2021.   (Hillman Dep.: 93:12-94:1).  Defendant counters that he has no memory of Plaintiff making either complaint to him.  (ECF No. 84-2, p. 41, Deposition of Dickson Wale Soroye ("Soroye Dep."): 40:12-41:8).

## II.   STANDARD OF REVIEW

Summary judgment is appropriate only if there are no genuine issues as to any material fact, such that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of showing that there is no genuine issue as to any material fact.  Fed. R. Civ. P. 56(a); *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987) (internal citation omitted).  The burden can be satisfied through the submission of, e.g., pleadings, depositions, answers to interrogatories, admissions, and affidavits.  *Celotex Corp.,* 477 U.S. at 323; *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984).  To defeat motions

for summary judgment, on the other hand, the nonmoving party cannot simply cast "metaphysical doubt" on the material facts, but rather must provide specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing Fed. R. Civ. P. 56(e)).

The Court must construe the facts and documentary materials submitted by the parties, including the credibility and weight of particular evidence, in the light most favorable to the party opposing the motions. *Masson v. N.Y. Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson*, 477 U.S. at 255). A mere scintilla of evidence is insufficient to create an issue of material fact. *See Barwick*, 736 F.2d at 958–59 (citing *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C 1966)). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

When faced with cross motions for summary judgment, "a court must 'evaluate each party's motion on its own merits, taking care [in each instance] to draw all reasonable inferences against the party whose motion is under consideration.'" *Snyder ex rel. Snyder v. Montgomery Cnty. Pub. Sch.*, Civ. No. DKC-2008-1757, 2009 WL 3246579, at *5 (D. Md. Sept. 29, 2009 (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)). If a court finds that a genuine issue of material fact precludes resolution, then it must deny both summary judgment motions. *Mingus*, 812 F.2d at 1391. However, "if there is not a genuine dispute and one or the other party is entitled to prevail as a matter of law, the court will render judgment." 10A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure*, § 2720 (4th ed. 2020).

## III.    ANALYSIS

Defendant moves for summary judgment on the following three grounds: (1) Plaintiff's Fourteenth Amendment claim is barred by the Prison Litigation Reform Act because he failed to exhaust his administrative remedies prior to filing this lawsuit; (2) Plaintiff's sole allegation that Defendant was deliberately indifferent to his health and safety must fail because there is no evidence in the record that Defendant knew, but was deliberately indifferent to the fact, that Plaintiff had been sexually assaulted by his cellmate; and (3) Defendant is entitled to qualified immunity.  (Defendant's Motion, pp. 3, 11, 16).

Plaintiff's memorandum in support of his cross-motion for summary judgment is identical to his memorandum in support of his opposition to Defendant's motion for summary judgment. Plaintiff moves for summary judgment on the following three grounds: (1) there is a genuine dispute of material fact as to whether the Defendant was deliberately indifferent to Plaintiff's risk of serious harm; (2) there is a genuine dispute of material fact as to whether the Defendant is entitled to qualified immunity; and (3) there is a genuine dispute of material fact as to whether CDF's administrative remedies were available to Plaintiff such that he was required to exhaust them pursuant to the Prison Litigation Reform Act.  (ECF No. 84, pp. 9-28; ECF No. 85, pp. 9-28).

As discussed further herein, there are genuine disputes of material fact that preclude resolution of Defendant's motion for summary judgment in his favor, and preclude resolution of Plaintiff's cross-motion for summary judgment in his favor.  Accordingly, both motions are denied. *See Mingus*, 812 F.2d at 1391.

*a.   Prison Litigation Reform Act*

Plaintiff asserts that the Defendant was deliberately indifferent by failing to protect him from a substantial risk of physical harm, which enabled his cellmate to sexually assault him, in violation of Plaintiff's Fourteenth Amendment right to due process.  (Third Amended Complaint, ¶¶ 54-58).  In response, Defendant raises the affirmative defense that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.  (Defendant's Motion, p. 3).

Pursuant to the PLRA:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  A "prisoner" for the purposes of the PLRA is "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  *Id.* § 1997e(h).  "Prison conditions" include "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA's exhaustion requirement is mandatory.  *Ross v. Blake*, 578 U.S. 632, 638-639 (2016).  Therefore, a court cannot ordinarily excuse a litigant's failure to exhaust administrative remedies.  *Id.*  Because an inmate's failure to exhaust administrative remedies is an affirmative defense, it is the Defendant's burden to prove that Plaintiff had remedies available to him that he failed to fully utilize.  *Jones v. Bock*, 549 U.S. 199, 211-212 (2007); *see also Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

A prisoner exhausts his available administrative remedies by pursuing "[his] administrative grievances until [he] receive[s] a final denial of the claims, appealing through all available stages in the administrative process so that the agency reaches a decision on the merits." *Clark v. Montgomery Cnty. Corr. Facility*, Civ. No. ELH-20-1194, 2020 WL 7129324, at *5 (D. Md. Dec. 4, 2020); *Jones*, 549 U.S. at 215-216 (the PLRA requires prisoners to exhaust prison grievance procedures before filing suit). However, a prisoner need not exhaust administrative remedies if those remedies are not available. *Ross*, 578 U.S. at 636.

An administrative remedy is "available" for the purposes of the PLRA if it is "'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 642 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). The Supreme Court has identified three circumstances when an administrative remedy is unavailable such that the PLRA's exhaustion requirement "does not come into play." *Id.* at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 643-644. Under the third circumstance, an administrative remedy is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

When evaluating the administrative remedies available to a prisoner, and whether a prisoner has properly exhausted those remedies, courts examine "'the applicable procedural rules—rules that are defined not by the PLRA, but by the prison grievance process itself.'" *Jones*

*v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).  Therefore, this Court must analyze CDF's grievance procedures.

Upon arrival at CDF, detainees are provided with a copy of the Detainee Handbook. (Koppel Decl., ¶ 3).  The 2015 version of CDF's Detainee Handbook includes a section titled "Problem Resolution" that sets forth "Informal Resolution Procedures/Formal Procedures. (ECF No. 84-3, p. 60).  The first sentence of this section provides that "[a]ll detainees shall attempt to resolve institutional-related complaints on an informal basis."  (ECF No. 84-3, p. 60).  The next three points in the section detail the steps that corrections officials are required to take if they receive an informal complaint form.  (ECF No. 84-3, p. 60).  Last, in two sentences, the final paragraph of this section provides that if a detainee is "not satisfied with the informal complaint process, [he has] the right to file a ***formal and final*** appeal in writing to the Warden within ten (10) calendar days after receiving the response."  (Detainee Handbook, p. 60) (emphasis in original).[2]

---

[2] This is how the "Problem Resolution" section appeared in the Detainee Handbook that Plaintiff received in August 2015:

**Problem Resolution**

**INFORMAL RESOLUTION PROCEDURES / FORMAL PROCEDURES**

1. All detainees shall attempt to resolve institutional-related complaints on an informal basis.
2. Upon receipt of an Informal Complaint Form, the Informal Complaint Coordinator shall:
   - A.   Initial the complaint and indicate the dated received;  and
   - B.   Assign an appropriate staff person, as determined by the nature of the complaint, to review the complaint and draft a response to the detainee.
3. Upon receipt of the Informal Complaint Form the assigned staff person shall:
   - A.   Review Section A to establish the basis of detainee's complaint;
   - B.   Review the appropriate regulations, directives, policies, and/or procedures to determine the following with regard to the incident or complaint; and
   - C.   On the basis of this review, the staff person  shall:
     - i.   Draft a response to the complaint in Section B of the Informal Complaint Form and return the response to the Coordinator within fifteen (15) calendar days; or

The next page in the Detainee Handbook is an "Informal Inmate Complaint Form." (ECF No. 84-3, p. 61). This form includes: 12 categories from which a detainee can select to identify the subject of his complaint, space for a detainee to describe his complaint and the remedy sought, and space for a correctional official's response to the detainee's complaint. (ECF No. 84-3, p. 61). The Informal Inmate Complaint Form does not include any language directing an inmate to submit a completed form as a pre-requisite to initiating CDF's informal resolution procedures. (*Id.*).

Defendant contends that he is entitled to summary judgment because Plaintiff admits that despite having received CDF's Detainee Handbook, he did not file a request for an administrative remedy or an informal grievance about being sexually assaulted. (Defendant's Motion, p. 8; Defendant's RFAs, ¶¶ 1, 2, 5). Plaintiff counters with two arguments: (1) that CDF's grievance procedure permits verbal and written complaints of sexual assault; and (2) that a reasonable jury, viewing the evidence in the light most favorable to Plaintiff, could find that CDF's administrative remedies were so opaque and confusing as to be incapable of use, and therefore, that he was exempt from the Prison Litigation Reform Act's exhaustion requirement. (ECF No. 84, Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Opposition") pp. 19-26). The Court addresses these arguments in turn.

---

ii.    Consult with the Housing Unit Lieutenant for approval of any corrective action or relief deemed appropriate. Draft a response, as directed and return the response to the department head or shift commander within fifteen (15) calendar days.

4.  Upon receipt of the response, the department head or shift commander shall:
   A.    Review, sign, and date the response;
   B.    Ensure that the response is sent to the detainee; and
   C.    Ensure that staff takes the appropriate action necessary to grant the approved relief.

If you are not satisfied with the informal complaint process, you have the right to file a ***formal and final*** appeal in writing to the Warden within ten (10) calendar days after receiving the response. You may contact your Unit Manager or Case Management Specialist for assistance.

(Detainee Handbook, p. 60).

First, Plaintiff argues that CDF's grievance procedure permitted him to make verbal or written complaints of sexual assault.  (Plaintiff's Opposition, pp. 19-23).  In support of this assertion, Plaintiff relies on the section of the Detainee Handbook titled "Your Right To Be Free From Sexual Assault," and "Sexual Misconduct."  The first of these two sections directs detainees to "[r]eport all incidents of sexual misconduct, sexual abuse and sexual harassment to a staff member immediately, either verbally or in writing," (ECF No. 84-3, pp. 53-54), whereas the second explains that a detainee "alleging an incident of sexual misconduct [by an employee or service provider" shall make the complaint by any of the following methods," including "[i]n person" or "[b]y telephone."  (ECF No. 84-3, pp. 56-57).

In his reply brief, the Defendant counters that these two sections of the Detainee Handbook are unconnected to CDF's administrative grievance procedures that the Plaintiff was required to exhaust prior to filing this lawsuit.  (ECF No. 86, pp. 4-6).  Rather, Defendant contends that CDF's administrative grievance procedures are set forth on page 60 of the Detainee Handbook.  (*Id.*, p. 6).  Defendant relies on the declaration of Robert Koppel, the former Warden of CDF, for the proposition that the Detainee Handbook "contains a chapter devoted to the exhaustion of administrative remedies, which starts with the filing of an Informal Complaint Form."  (Koppel Decl., ¶ 4).

Even though the Plaintiff concedes that he did not submit any form of informal grievance in writing, after reviewing all of the evidence provided, this Court finds that CDF's administrative grievance procedures, as they existed during Plaintiff's detention, were both opaque and incapable of use, and therefore unavailable to Plaintiff.  As a preliminary matter, this Court concludes that the first sentence of the "Problem Resolution" section of the Detainee Handbook does not specify whether verbal or written complaints are required as part of a detainee's "attempt" to informally

12

resolve institution-related complaints.  Relatedly, this sentence does not affirmatively prohibit verbal complaints as part of the "attempt" process.  Therefore, a detainee could reasonably infer that he was permitted to make verbal or written complaints in an effort to informally resolve an institutional-related complaint."  Next, the Court finds that the first sentence of CDF's "Problem Resolution" section does not define what constitutes an "institutional-related" complaint, as it is devoid of language explaining what topics are appropriate for complaint.  Thus, this section does not preclude the Plaintiff from raising in his oral complaint the subject of physical harm and the need to be moved.  Additionally, the first sentence provides only that a detainee shall "**attempt to**" resolve these "institutional-related complaints" on an informal basis, but is silent on what those "attempts" must look like.[3]  Moreover, no part of these administrative grievance procedures explicitly *mandate* that a detainee complete and submit CDF's Informal Complaint Form to initiate the informal complaint process.  Rather, the bulk of CDF's informal resolution procedures (points numbered 2-4) are devoted to those procedures that correctional officials must follow if, in fact, they receive an Informal Inmate Complaint Form.  All of these administrative grievance procedures are silent as to the process for resolving an oral complaint made by a detainee.  Regarding the last paragraph in the section, the Court finds that it merely provides that a detainee has the **right** to file a "formal and final [written] appeal" in a scenario where the detainee has filed an "Informal Complaint Form" and received an adverse response.  However, that paragraph does not say that the detainee is **required** to file a "formal and final [written] appeal."  (Detainee Handbook, p. 60).

---

[3] On this point, Defendant argues that nothing in the "plain language of the Informal Complaint process" states that a verbal report of a sexual assault is "an adequate substitute for working one's way through the established grievance process."  (ECF No. 86, p. 6).  But Defendant does not cite any language in the Detainee Handbook that clearly establishes that a detainee *must* submit an Informal Inmate Complaint Form as part of the established grievance process.

Furthermore, the Court finds that the mere inclusion of an Informal Inmate Complaint Form in the Detainee Handbook, without more, is insufficient to put a detainee on notice that the submission of a completed form is **required** to initiate the informal complaint process.  *Cf. Goebert v. Lee Cnty.*, 510 F.3d 1312, 1322 (11th Cir. 2007) (finding administrative remedy unavailable to plaintiff because appeal procedure set forth in jail's general operating procedures was not included in inmate handbook).

Moreover, this Court is hard-pressed to understand why the "Problem Resolution" section of the CDF Detainee Handbook could not have been more clearly written.  If the drafters of CDF's administrative grievance procedures intended to require detainees to submit an Informal Inmate Complaint Form to initiate the informal complaint process, they could have written a set of procedures that explicitly required as much.[4]

In sum, this Court finds that CDF's administrative grievance procedure was so opaque that it was not "capable of use," and was, therefore, unavailable to Plaintiff during his detention at CDF.  *Ross*, 578 U.S. at 643-44.  Accordingly, Defendant's motion for summary judgment on grounds that Plaintiff failed to exhaust his administrative remedies is denied.

---

[4] For example, the Maryland Department of Public Safety and Correctional Services has made available to Maryland state prisoners an "administrative remedy procedure" ("ARP") that clearly and unequivocally sets forth the steps a prisoner must take to exhaust the ARP process.  *See Battle v. Bishop*, Civ. No. GJH-19-2966, 2021 WL 1174693, at *6 (D. Md. Mar. 29, 2021) (citing Md. Code Ann., Corr. Servs., §§ 10-201 *et seq.*; Md. Code Regs. §§ 12.07.01.01(B)(1); §§ 12.02.28 *et seq.*) (explaining that "[t]o exhaust the ARP process, a prisoner *must* first file an ARP complaint with the warden of the prison within 30 days of the incident or when the prisoner gains knowledge of the injury giving rise to the complaint . . . if the ARP complaint is denied, or the inmate does not receive a timely response, a prisoner *must* file an appeal with the Commissioner of Correction within 30 days . . . [i]f the appeal is denied, the prisoner *must* appeal within the 30 days to the inmate grievance office . . . [i]nmates may then seek judicial review of the [inmate grievance office's] final determination in a Maryland Circuit Court") (emphasis added).

*b.  Deliberate Indifference*

Next, Defendant contends that he is entitled to summary judgment because there is no evidence that he was deliberately indifferent to Plaintiff's health and safety by failing to separate Plaintiff from his cellmate on September 2, 2015 and September 15, 2015.  (Defendant's Motion, p. 11).  This Court does not find Defendant's argument persuasive.

Plaintiff filed this suit pursuant to 42 U.S.C. § 1983, alleging that Defendant violated his rights under the Due Process Clause of the Fourteenth Amendment by failing to protect him from a substantial risk of serious physical harm due to his placement in a cell with Mr. Lee.  Because the protections afforded to a pre-trial detainee under the Fourteenth Amendment are similar to those provided by the Eighth Amendment to post-conviction detainees, "when a pretrial detainee brings a Fourteenth Amendment failure-to-protect claim, the same standards apply as for an Eighth Amendment claim brought by a convicted prisoner."  *Perry v. Barnes*, Civ. No. PWG-16-705, 2019 WL 1040545, at *3 (D. Md. Mar. 5, 2019) (collecting cases).

"The Eighth Amendment requires prison officials to 'take reasonable measures to guarantee the safety of the inmates.'"  *Cox v. Quinn*, 828 F.3d 227, 235 (4th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  This includes "a specific 'duty . . . to protect prisoners from violence at the hands of other prisoners.'"  *Id.* (quoting *Farmer*, 511 U.S. at 833).  To establish that prison officials are liable for failing to protect a prisoner from inmate violence, a plaintiff must satisfy a two-part test: "[f]irst, the deprivation alleged must be, objectively, sufficiently serious"; and second, "the defendant prison officials must have had a sufficiently culpable state of mind."  *Id.* at 235-236 (citations and quotation marks omitted).

In the present case, Defendant does not dispute that Mr. Lee's sexual assaults of the Plaintiff were sufficiently serious.  Rather, the crux of Defendant's argument is that Plaintiff's

complaints to Defendant—that he was "having problems" with his cellmate, "concerned for [his] safety, and that it was urgent for [Defendant] to separate" Plaintiff from his cellmate—were insufficiently detailed for the Defendant to have inferred that Plaintiff faced a substantial risk of serious harm, let alone that Plaintiff had been sexually assaulted.  (ECF No. 86, pp. 13-14). Plaintiff counters that there is a genuine dispute of material fact as to whether the Defendant had a sufficiently culpable state of mind and acted with deliberate indifference towards the Plaintiff. (ECF No. 84, p. 12).

"In prison-condition cases," to demonstrate that a correctional official had a sufficiently culpable state of mind, a plaintiff must show that the official was deliberately indifferent to inmate health or safety.  *Cox*, 829 F.3d at 236.  Liability under this standard requires establishing that: (1) the prison official must have "subjectively recognized a risk of substantial harm"; and (2) the official subjectively "recognized that his actions were inappropriate in light of that risk."  *Cambell v. Florian*, 972 F.3d 385, 395 (4th Cir. 2020) (quotations, citations, and alterations omitted); *Cox*, 828 F.3d at 236.   A determination of whether a correctional official acted with deliberate indifference "is a question of fact that can be proven through direct or circumstantial evidence." *Cox*, 828 F.3d at 236.  As the Fourth Circuit has explained:

> [a] plaintiff can make a prima facie case of deliberate indifference "by showing 'that a substantial risk of [serious harm] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it.'"

*Cox*, 828 F.3d at 236 (alteration in original) (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Farmer*, 511 U.S. at 842)).

A prison official cannot "avoid liability simply because he was unaware that the inmate was 'especially likely to be assaulted by the specific prisoner who eventually committed the

16

assault.'" *Cox*, 828 F.3d at 236 (quoting *Farmer*, 511 U.S. at 842).  Moreover, a correctional official's "response to a known threat to inmate safety must be reasonable." *Id.*  A prison official is "deliberately indifferent if they are aware that 'the [p]laintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so.'" *Cox*, 828 F.3d at 236 (quoting *Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 723 (4th Cir. 2010)).  Importantly, "a factfinder may conclude that a [correctional] official's response to a perceived risk was so patently inadequate as to justify an inference that the official actually recognized that his response to the risk was inappropriate under the circumstances." *Cox*, 828 F.3d at 236 (quoting *Parrish*, 372 F.3d at 303).

The Fourth Circuit's decision in *Cox v. Quinn*, is instructive.  Cox, an inmate housed in a Virginia correctional facility, submitted numerous informal complaint forms, repeatedly informed correctional officers that he feared for his safety and wished to be relocated to a different housing unit, and expressly requested that correctional officers not discuss his concerns with other inmates out of fear of retribution.  *Cox*, 828 F.3d at 237.  The Fourth Circuit held that a reasonable jury could conclude that the correctional officer defendants "had been exposed to information concerning the risk to Cox's safety and therefore must have known about it." *Id.* at 237.  The Fourth Circuit further held, that "a reasonable jury could also decide that the correctional officers knew Cox faced a serious danger to safety," but failed to avert that danger, by disregarding an instruction from a superior officer "to remove Cox from the pod and lock it down if Cox feared for his safety." *Id.* (quotation marks, alteration, and citation omitted).

Here, construing the evidence in the light most favorable to the Plaintiff, a reasonable jury could conclude that the Defendant was subjectively "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," and also that Defendant drew that

inference. *Farmer*, 511 U.S. at 837.  According to Plaintiff, he twice informed the Defendant that he and his cellmate were having problems, that he was concerned for his safety, and that it was urgent that he be separated from his cellmate.  (Hillman Decl.: 93:6-21).  A reasonable jury could therefore conclude that Defendant had been "'exposed to information concerning the risk'" to Plaintiff's safety and accordingly "'must have known about it.'"  *Cox*, 828 F.3d at 237 (quoting *Farmer*, 511 U.S. at 842).

Furthermore, a reasonable jury could conclude that the Defendant knew that Plaintiff faced a serious danger to his safety and could have acted "to avert the danger easily" by notifying his supervisor of Plaintiff's complaints, "yet fail[ed] to do so."  *Cox*, 828 F.3d at 236 (quotation marks and citation omitted).  During his deposition, Defendant testified that if an inmate had told him that they were "concerned of serious physical harm," he would have been "required . . . to let my supervisor know what is going on, that he complained of bodily harm with his cellmate (sic)." (Soroye Dep.: 40:12-20, 41:9-21).  Defendant testified that when an inmate complains that they fear seriously bodily harm, such complaints constitute an "unusual incident" that must be reported to a supervisor, (Soroye Dep.: 21:10-21), and constitute an emergency, (Soroye Dep.: 28:9-14). Defendant further testified that his responsibilities also included interviewing inmates to obtain facts regarding any incidents, which he would in turn report to his supervisor.  (Soroye Dep.: 23:17-22).

Construing the evidence in the light most favorable to Plaintiff, a reasonable factfinder could conclude that Plaintiff twice informed the Defendant that he was concerned for his physical safety and that it was urgent that he be separated from his cellmate, (Hillman Dep.: 93:6-18), and that the Defendant took no further action in response to Plaintiff's complaints—either by moving the Plaintiff to another cell or alerting his supervisors to Plaintiff's complaints, (Soroye Dep.:

48:10-13).  In light of Defendant's testimony that an inmate expressing a fear of bodily harm constitutes an emergency that must be reported to a supervisor, a reasonable factfinder could conclude that Defendant's failure to do so here was such a "patently inadequate" response to a perceived risk "as to justify an inference that the [Defendant] actually recognized that his response to the risk was inappropriate under the circumstances."  *Cox*, 828 F.3d at 236 (quotation marks and citation omitted).

Accordingly, Defendant's motion for summary judgment on the issue of deliberate indifference is denied.

### c.  *Qualified Immunity*

Finally, Defendant contends that this Court should grant his motion for summary judgment because he is entitled to qualified immunity.  This Court disagrees.

The doctrine of qualified immunity shields a correctional officer from liability, even where that officer has violated a prisoner's constitutional right, "if an objectively reasonable officer could have believed that his actions were lawful in light of clearly established law."  *Cox v. Quinn*, 828 F.3d 227, 238 (4th Cir. 2016) (quotation marks and citation omitted).  A correctional officer violates a "clearly established" right when "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful."  *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quotation marks and citations omitted).  When conducting this inquiry, a court must "define the right in light of the specific context of the case, not as a broad general proposition."  *Cox*, 828 F.3d at 238 (quotation marks and citations omitted).  However, it is not necessary, "that 'the exact conduct at issue' have been previously held unlawful."  *Id.* (quoting *Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 773 (4th Cir. 2016)).  Rather, a court considers not only "specifically adjudicated rights, but those manifestly

included within more general applications of the core constitutional principle involved." *Amaechi v. West*, 237 F.3d 356, 362-363 (4th Cir. 2001).  When resolving an assertion of qualified immunity at the summary judgment stage, if there "is a genuine question of material fact regarding '[w]hether the conduct allegedly violative of the right actually occurred [the issue] must be reserved for trial.'" *Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005) (quoting *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992)).

Defendant argues that his conduct did not violate any clearly-established statutory or constitutional rights, particularly where Defendant was not aware that Plaintiff had been sexually assaulted by his cell mate.  (ECF No. 83-1, p. 18).  In this Court's view, this framing too narrowly circumscribes Plaintiff's complaints.  As such, this Court need not determine whether "clearly established constitutional principles required [the Defendant] to extrapolate a complaint of sexual assault from a verbal request for a cell change."  (ECF No. 86, p. 12).  Rather, the question before this Court is whether Defendant's failure to move Plaintiff from his cell, in light of Plaintiff's complaints of fear for his physical safety, violated clearly established law.

The Fourth Circuit, in holding that qualified immunity did not shield a correctional officer from a prisoner's failure to protect clam, has explained that:

> It has long been established that jail officials have a duty to protect inmates from a substantial and known risk of harm, including harm inflicted by other prisoners . . . . Moreover, by 2011, we had made it clear that a prison official acts with deliberate indifference when he ignores repeated requests from a vulnerable inmate to be separated from a fellow inmate who has issued violent threats which the aggressor will likely carry out in the absence of official intervention.

*Cox*, 828 F.3d at 239 (citing *Farmer*, 511 U.S. at 833 ("prison officials have a duty to . . . protect prisoners from violence at the hands of other prisoners")).  The Fourth Circuit's decision in *Cox v. Quinn* is instructive.  There, an inmate informed correctional officers that he was being threatened,

robbed, and that he feared for his safety—concerns that were corroborated by other inmates.  *Id.*
at 239.  In response, the correctional officers discussed inmate Cox's concerns with the inmates
who were threatening him, despite having been instructed by their sergeant to relocate Cox or
lockdown the section of the facility where Cox was being housed if he feared for his safety.  *Id.* at
237, 239.  And when Cox again sought help from a correctional officer shortly before he was
attacked, that officer threw up his hands and walked away.  *Id.* at 239.  In affirming the district
court's denial of qualified immunity to the correctional officers, the Fourth Circuit concluded that
"[u]nder the law of this Circuit, an objectively reasonable correctional officer . . . would have
known that these actions . . . ran afoul of clearly established law."  *Id.*

The Fourth Circuit's decision in *Odom v. South Carolina Department of Corrections* is
also instructive.  There, the Fourth Circuit reversed a district court's grant of summary judgment
for the defendants based on qualified immunity, finding instead that correctional officers, who
ignored a prisoner's request for help as other inmates attempted to harm him, were not shielded by
qualified immunity.  *Odom*, 349 F.3d at 773-774.  The Fourth Circuit explained, that at the time
of the incident in *Odom*, it was clearly established in this circuit "that a correctional officer who
stands by as a passive observer and *takes no action whatsoever* to intervene during an assault
violates the rights of the victim inmate."  *Id.* at 773 (citing *Gordon v. Leeke*, 574 F.2d 1147, 1152
(4th Cir. 1978)).  Although there is no evidence in the record before this Court that the Defendant
was a passive observer during Plaintiff's sexual assaults, *Odom* clearly adopted the holdings of
other circuit courts of appeal concluding that correctional officials have a duty to separate
vulnerable inmates from fellow inmates who have issued violent threats likely to be carried out in
the absence of official intervention.  *Id.* at 773 (collecting four cases that stand for this proposition).

Here, a reasonable factfinder, viewing the facts in the light most favorable to the Plaintiff, could find that the Plaintiff twice informed the Defendant that he was "having problems" with his cellmate, that he was "concerned for [his] safety, and that it was urgent for [Defendant] to separate" the Plaintiff from Mr. Lee. (ECF No. 43-1, ¶¶ 27-31). A reasonable jury could also conclude that the Defendant failed to take any action in response to Plaintiff's repeated complaints, as the Defendant did not move Plaintiff to a different cell or inform his supervisors of Plaintiff's complaints. (Soroye Dep.: 48:10-13). Thus, construing the facts in the light most favorable to the Plaintiff, under the law of this Circuit, an objectively reasonable correctional officer would have known that Defendant's conduct violated clearly established law and ran afoul of the duty imposed on correctional officers by the Eighth Amendment "'to protect prisoners from violence at the hands of other prisoners.'" *Odom*, 349 F.3d at 773 (quoting *Farmer*, 511 U.S. at 833). Accordingly, Defendant is not entitled to qualified immunity and his motion for summary judgment on this basis is denied.

## IV.    CONCLUSION

For the foregoing reasons, Defendant Soroye's Motion for Summary Judgment is **DENIED** (ECF No. 83), and Plaintiff's Cross-Motion for Summary Judgment is **DENIED** (ECF No 85).

A separate Order will follow.


Dated:  November 16, 2021                              _____/s/_____
                                                       The Honorable Gina L. Simms
                                                       United States Magistrate Judge

22